IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTINA M. BUTCHER,

      **Plaintiff,**

  v.                                  Civil Action 2:20-cv-6081
                                        Judge Sarah D. Morrison
                                        Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Christina Butcher, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's non-disability determinations.

**I.**    **BACKGROUND**

Plaintiff protectively filed applications for DIB and SSI on August 23, 2018, alleging that she was became disabled on January 1, 2006, and August 10, 2018. (Tr. at 261–62, 263–69). After her applications were denied initially and on reconsideration, an Administrative Law Judge (the "ALJ") held a video hearing on January 8, 2020. (Tr. 94–119). On January 16, 2020, the ALJ issued a decision denying Plaintiff's applications for benefits. (Tr. 73–93). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–7).

Plaintiff filed a Complaint seeking this Court's review of the Commissioner's decision on November 27, 2020 (Doc. 1), and the Commissioner filed the administrative record on May 28,

2021 (Doc. 14). Plaintiff filed her Statement of Errors on July 27, 2021. (Doc. 18). Defendant filed an Opposition on October 12, 2021. (Doc. 21). Plaintiff filed a Reply. (Doc. 25). Accordingly, the matter is ripe for review.

  **A.  Relevant Medical Evidence**

  The ALJ summarized Plaintiff's testimony about her mental health impairments:[1]

> The claimant testified to depression and anxiety. She testified difficulty being around people wit, [sic] with panic attacks if there is too much going on around her. However, the claimant testified she lives with her son with Asperger's syndrome. She has her other children for half the month. She testified she is able to put clothes in the washer, and prepare some meals. She testified her neighbor gives her rides to go grocery shopping and she uses insurance transportation for appointments. Most notably, the claimant worked for much of the relevant period, including at substantial gainful activity for approximately a year, when she worked at the deli counter at Kroger, as testified. The claimant's treatment has consisted of outpatient psychotherapy and medication management . . .
>
> The claimant testified she has bad anxiety and depression. She gets panic attacks if there is too much going on. She gets anxious if there are more than five people in a room. She gets tremors in her hands, arms and legs.

(Tr. 80, 82).

  The ALJ also summarized Plaintiff's mental health treatment records:

> Turning to the claimant's mental health impairments, she has a documented history of anxiety and depression. However, her treatment has remained relatively conservative, with mixed objective findings. The claimant sought mental health treatment in February 2018 reporting anxiety and depression. However, she reported her symptoms were 'manageable' (Exhibit 5F/16). Mental status examination revealed an unremarkable appearance, and speech, with anxious and depressed mood and affect. She evidenced no hallucinations, and was oriented to time place, and person, with no apparent impairment of judgment, or memory (Exhibit 5F/21). At her initial evaluation for medication management, she reported depression and anxiety, particularly when in public. However, findings noted no lose associations, clear and linear thought process, no overt delusions, no hallucinations, intact judgment and insight no memory impairments, normal attention span and concentration, and appropriate mood and affect (Exhibit 5F/7). She was provided an increase in prescribed medications. Subsequent visits in 2018

---

[1] Because Plaintiff's allegation of error pertains only to her mental health impairments, the Undersigned's discussion is focused on the same.

continue to document relatively normal mental status examination findings (Exhibit 5F/1, 7f/11; 9F/8, 13F/13).

As of May 2019, the claimant was noted to have last been seen in December 2018, with missed and cancelled appointment. The claimant however, reported doing ok aside from increased sleep issues. She appeared with normal speech, no loose or tangential associates; clear and linear thought process; no over delusions; intact judgment and insight; no memory impairment; normal attention and concentration; appropriate mood and affect; and she was alert and oriented to time, place and person (Exhibit 13F/26). Her treatment continued to consist of outpatient psychotherapy and medication management. At her July 2019 psychotherapy visit, she was also note [sic] to have been last seen in December 2018 (Exhibit 15F). Most recently, at her august 2019 medication follow up she presented with regular speech, normal associations, clear and linear thought process no over delusions or hallucinations, intact judgment and insight, normal attention and concentration, normal memory, appropriate mood and affect, and she was oriented to time, place and person (exhibit 19F/7).

(Tr. 84).

### B. The ALJ's Decision

The ALJ explained that Plaintiff's date last insured was June 30, 2003, but that there were no treatment records or evidence of severe impairment prior to that date. (Tr. 82 n.1). The ALJ further explained that Plaintiff became reinsured July 1, 2018, and that she meets the insured status requirement through June 30, 2023. (Tr. 82 n.1, 78). The ALJ found that although Plaintiff had engaged in substantial gainful activity from fourth quarter 2017 through second quarter 2018, there was a continuous 12-month period during which Plaintiff had not been so engaged. (Tr. 78).

The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease and degenerative joint disease of the lumbar spine; migraine headaches; obesity; anxiety disorder; and depressive disorder. (Tr. 79). The ALJ found, however, that none of Plaintiff's impairments, either singly or in combination, meet or medically equaled a listed impairment. (*Id*.).

The ALJ also assessed Plaintiff's residual functional capacity ("RFC"):

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb ramps

3

or stairs; must avoid climbing ladders, ropes or scaffolds frequently stoop and crouch; occasionally crawl; must avoid hazards including moving machinery, heavy machinery, and unprotected heights, and commercial driving. The claimant can tolerate no fast pace work or strict production quotas; tolerate occasional but superficial interaction with coworkers, supervisors, and the public (superficial being that which is beyond the performance of job duties and job functions for a specific purpose and short duration); able to tolerate occasional changes and occasional decision making so as to provide for low stress. The claimant would need a position where there are routine scheduled breaks every two hours; and she would be absent once every three months due to the severity of migraines.

(Tr. 81).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence and other evidence in the record …" (Tr. 82).

Relying on a vocational expert's testimony, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a deli worker and fast food worker but could perform jobs that exist in significant numbers in the national economy, such as mail clerk, cleaner, and sorter. (Tr. 86–87). The ALJ therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 1, 2003, through the date of this decision." (Tr. 88).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### III. DISCUSSION

Plaintiff raises two assignments of error.  She first alleges that the ALJ erred when evaluating the prior administrative findings from the state agency reviewing psychologists. (Doc. 18, at 6–11).  Plaintiff next alleges that 42 U.S.C. § 902(a)(3), which limits the President of the United States' power to remove the Commissioner of Social Security without cause, violates the separation of powers doctrine, and thus, the Commissioner's delegation of power to the ALJ who adjudicated her claim was defective.  (*Id*. at 12–16).  Both assignments of error lack merit.

#### A. Evaluation of the State Agency Reviewing Psychologists' Findings

Plaintiff alleges that the ALJ erred when evaluating prior administrative findings[2] from the state agency reviewing psychologists.  Specifically, she alleges that the ALJ erred by discounting their findings about Plaintiff's concentration and persistence limitations without providing an adequate explanation for doing so.  This allegation lacks merit.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1) (2012).  A claimant's RFC assessment

---

[2] A prior administrative finding is defined as a finding about a medical issue made by a Federal or State agency medical or psychological consultant at a prior level of review.  *See* §§ 404.1513(a)(2), (5); 416.913(a)(2), (5).

5

must be based on all the relevant evidence in a his or her case file. *Id*. The governing regulations[3] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)–(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

---

[3] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each medical opinion individually. §§ 404.1520c(b)(1); 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id.*

Here, the state agency reviewing psychologists found that Plaintiff was moderately limited with regard to her ability to maintain attention and concentration for extended periods and as a result, found that she had the following limitations:

> Depressive [symptoms] may episodically attenuate pace of task completion and productivity. [Plaintiff] may need occasional flexibility of scheduled tasks and breaks, within a normal workday/workweek, to manage symptoms and regain focus, allowing her time to regain focus. She can perform work in a setting that is absent from fast paced demands or strict production quotas.

(Tr. 130, 145). The ALJ determined that these findings were only partially persuasive. The ALJ wrote, in relevant part:

> The undersigned finds the opinion of the state agency psychological consultants partially persuasive, to the extent they opine to some limitations in the areas as noted. However, the undersigned finds the opinions as to the claimant's limitations in concentration and persistence unsupported, particularly the opinion as to the claimant's need for flexibility in tasks and breaks. The claimant's treatment records repeatedly note no impairment of the claimant's attention span or concentration, as previously discussed (Exhibit 5F; 13F; 19F) . . . .

(Tr. 86).

Plaintiff asserts that the ALJ erred because the ALJ did not explicitly discuss the supportability factor when discounting the reviewing psychologists' findings about her concentration and persistence. Although the new regulations are less demanding than the former rules governing the evaluation of medical opinions and findings "they still require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 20-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). As one Court recently explained,

7

> The new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). An "ALJ's failure . . . to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [claimant's] disability determination was supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021).

*Hardy v. Comm'r of Soc. Sec.*, No. 20-101918, 2021 WL 3702170, at *4 (E.D. Mich. Aug. 13, 2021). But here, the Undersigned finds that the ALJ clearly considered the supportability factor and found it wanting. The ALJ wrote that the reviewing psychologists' findings about Plaintiff's limitations in concentration and persistence were unsupported, particularly with regard to flexibility and breaks, because Plaintiff's treatment records repeatedly noted no impairments in her attention span or concentration. (Tr. 86). The ALJ also referenced several treatment notes and her prior discussion of the same. (*Id*.). That provided a sufficient rationale for this Court's review.

The Undersigned further finds that this determination was supported by substantial evidence. Again, the ALJ discounted these findings because Plaintiff's treatment records repeatedly noted no impairments in her attention span or concentration. (*Id*.). That is an accurate assessment of the record evidence— comprehensive psychiatric examinations on August 28, October 17, and December 18, 2018, and on May 8, May 29, and August 21, 2019, found that Plaintiff's attention span and concentration were within normal limits. (Tr. 667, 1373, 1563, 1575, 1601, 1704). In addition, other findings from Plaintiff's mental status examinations were unremarkable. For example, examinations routinely found that Plaintiff's memory was intact, or normal, or that Plaintiff had no apparent memory impairments. (Tr. 461, 477, 481, 484, 487, 492, 498, 502, 507, 539, 558, 667, 680, 1372, 1464, 1563, 1575, 1601, 1704). Examinations regularly found that Plaintiff's thought processes were goal directed or clear and linear (Tr. 459, 461, 666, 1372, 1562, 1575, 1600, 1703), and that her thought contents were normal (Tr. 466, 510, 779, 836, 1010, 1137, 1155, 1166, 1280, 1303, 1407, 1464, 1510, 1618). Examinations regularly found that Plaintiff's cognition was normal (Tr. 477, 481, 484, 487, 492, 498, 502, 507, 539, 1464), or noted that she had no cognitive impairment (Tr. 1582). Examinations regularly found that Plaintiff's judgment was normal or

intact (Tr. 466, 477, 481, 484, 487, 492, 498, 502, 507, 510, 539, 558, 667, 779, 951, 968, 1010, 1155, 1166, 1280, 1303, 1372, 1407, 1464, 1510, 1563, 1575, 1601, 1618, 1704), and that her insight was likewise normal or intact (Tr. 667, 1372, 1563, 1575, 1601, 1704). In short, as the ALJ noted elsewhere in her determination, the record reflects relatively normal mental status examinations. (Tr. 86).

Plaintiff contends that when discussing the supportability factor, the ALJ should have "considered what the state agency psychologists said in their reports." (Doc. 18, at 8). The governing regulations provide that "the more relevant the objective medical evidence and supporting explanation presented by a medical source are to support his or her . . . prior administrative medical finding(s), the more persuasive the . . . prior administrative medical finding(s) will be." 20 C.F.R. §§ 416.920(c)(1); 404.1520(c). In this case, the psychological reviewers noted that a mental status examination on August 28, 2018, found that Plaintiff's "attention span and concentration w/in normal limits." (Tr. 131, 146, 164, 179). This examination finding, which contradicted the state agency psychologists' administrative findings about Plaintiff's concentration, was relevant objective evidence. Therefore, the ALJ did not err by referring to her discussion of it and other such examination findings when discussing the supportability factor. (Tr. 86, referring to Tr. 84).

Plaintiff also points to treatment records documenting instances when Plaintiff reported concentration problems. (Doc. 18, at 10–11.) But even if other record evidence may have supported more restrictions, if substantial evidence supports an ALJ's determination, that determination is given deference "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). For these reasons, the Undersigned finds that the ALJ did not commit reversible error when evaluating the state agency reviewing psychologists' prior administrative findings. Plaintiff's claims to the contrary lack merit.

    **B.    Separation of Powers**

Plaintiff also contends that remand is required because a statute that provided tenure

protection to the former Commissioner of Social Security, Andrew Saul, violated the separation of powers doctrine, and therefore, the decision to deny her benefits was made by individuals who lacked a proper delegation of power to make benefits determination. This contention lacks merit.

    1.    Plaintiff's Constitutional Claim is Procedurally Improper

As an initial matter, the claim is procedurally improper. Plaintiff's Complaint does not include any Constitutional claims. (Doc. 1.) Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, however, that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint need not provide "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At a minimum, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. Here, the United States Supreme Court case upon which Plaintiff bases her Constitutional claim was decided on June 20, 2020. Yet Plaintiff gave no notice, let alone fair notice, of her Constitutional claim in her November 27, 2020, Complaint. *See John R. v Comm'r of Soc. Sec*., Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that a plaintiff failed to comply with Rule 8 by failing to plead a separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18, 2021) (same). For that reason, she failed to comply with Rule 8.

    2.    Plaintiff's Constitutional Claim Lacks Merit

But even if Plaintiff's Complaint was rule compliant, her Constitutional claim lacks substantive merit. Removal of the Commissioner is governed by 42 U.S.C. § 902(a)(3) which provides that the Commissioner may only be removed from office "pursuant to a finding by the

President of neglect of duty, malfeasance in office." *Id*. The parties agree that two recent United States Supreme Court cases cast doubt on the constitutionality of that provision.

In *Seila Law LLC v. Consumer Financial Protection Bureau*, the Supreme Court held that a provision that allowed the president to remove the Director of the Consumer Financial Protection Bureau ("CFPB") only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers doctrine by insulating the director from removal by the President. 140 S.Ct. 2183, 2197 (2020). In *Collins v. Yellin*, decided one year later, the Supreme Court held that a provision limiting the President to removing the Director of the Federal Housing Finance Agency ("FHFA") only for cause similarly violated the separation of powers doctrine. 141 S.Ct. 1761, 1783 (2021) (holding that "*Seila Law* is all but dispositive"). Plaintiff asserts that like the Directors of the CFPB and the FHAA, the Commissioner of Social Security is a single officer at the head of an administrative agency, and therefore, §902(a)(3)'s attempt to impose any restraints on the President's power to remove the Commissioner also violates the separation of powers doctrine. The Commissioner agrees. (Doc. 21, at 9) (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021)).

Plaintiff further asserts that because this removal provision is unconstitutional, any delegations of power by Former Commissioner Saul, including delegations of authority to ALJs or the Appeals Council who determined her benefits claims, were invalid. The Commissioner contends that Plaintiff's argument fails because the ALJ who determined Plaintiff's claim on January 16, 2020, held office on that date, not because of a delegation of authority from Former

11

Commissioner Saul, but because of a ratification of delegated authority on July 16, 2018,[4] by Former Acting Commissioner Nancy Berryhill. (Doc. 21, at 12). And the Commissioner correctly notes that an Acting Commissioner is not subject to § 902(a)(3)'s removal provision, and therefore that provision's constitutionality, or lack thereof, is irrelevant. *See Collins*, 141 S.Ct. at 1781 (because the FHFA removal restrictions only applied to the Director, "any constitutional defect in the provisions restricting the removal of a confirmed Director would not have harmed [the plaintiffs], and they would not be entitled to any relief" from actions of the Acting Director who enjoyed no such removal protections); *Thomas E. v. Comm'r of Soc. Sec.*, C21-5107-BAT, 2021 WL 5415241, *5 (W.D. Wash. Nov. 19, 2021) (finding no constitutional injury where ALJ's appointment was ratified by Acting Director Berryhill who, as Acting Director, was not subject to the removal provision in § 902(a)(3)); *Alice T. v. Comm'r of Soc. Sec.*, 8:21CV14, 2021 WL 5302141, *18 (D. Neb. Nov. 15, 2021) (same); *Boger v. Kijakazi*, No. 1:20-cv-00331-KDB, 2021 WL 5023141, * 3 n.4 (W.D.N.C Oct. 28, 2021) ("Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because [the ALJ] was appointed by an Acting Commissioner of Social Security who could be removed from the office at the President's discretion.") (emphasis in original).

Nevertheless, Plaintiff asserts that "it is uncontested" that the ALJ and the Appeals Council adjudicated her disability application pursuant to a delegation of authority from Former Director

---

[4] In *Lucia*, the Supreme Court found that the United States Security Exchange Commission (SEC) ALJs were "inferior officers" under the Appointments Clause, U.S. Const. art II, § 2, cl. 2, and therefore, had to be appointed by a President, a court, or the head of an agency instead of lower-level staff. *Lucia v. S.E.C.*, 138 S.Ct. 2044, 2051 (2018). Although *Lucia* involved ALJs at the SEC, on July 16, 2018, Acting Commissioner Berryhill ratified the appointment of the Social Security Administration's ALJ's and administrative appeals judges who were previously appointed by lower-level staff in response to the ruling in *Lucia*. See SSR 19-1p, 84 Fed Reg. 9582, (2019).

Saul. (Doc. 25, at 6, n.2). The Court need not resolve this factual dispute but finds instead that even if Former Director Saul appointed the ALJ and Appeals Council judges[5] who determined Plaintiff's benefits claim, the constitutionality of § 902(a)(3) would not warrant remand for several reasons.

First, even if the removal provision in § 902(a)(3) is unconstitutional, it would not have deprived Former Commissioner Saul of the ability to delegate power to others to decide Plaintiff's benefit claim because of the doctrine of severability. As the Supreme Court noted in *Seila Law*, "'one section of a statute may be repugnant to the Constitution without rendering the whole act void.'" 140 S.Ct. 2208 (quoting *Loeb v. Columbia Township Trustees*, 179 U.S. 472, 490 (1900)). Indeed, even in the absence of a severability clause, when "'confronting a constitutional flaw in a statute, [the Supreme Court tries] to limit the solution to the problem, severing any problematic portions while leaving the remainder intact.'" *Id*. (quoting *Free Enterprise Fund v. Public Co. Accounting Oversight Bd*., 561 U.S. 477, 508 (2010)). For that reason, in *Seila Law*, the Supreme Court found that the unconstitutional removal provision was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the unconstitutional removal provision was stricken. 140 S.Ct. at 2209–10, 2245. Such is the case here. If the removal provision in § 902(a)(3) is stricken, the Social Security Administration would remain fully functional. *Alice A. v. Comm'r of Soc. Sec.*, Case No. C20-5756, 2021 WL 5514434, *6 (W.D. Wash. Nov. 24, 2021) (finding that plaintiff's separation of powers claim failed, in part,

---

[5] The Undersigned does not accept Plaintiff's assertion in her Reply that the Commissioner waived any defense to her separation of power claim with regards to the Appeals Council by failing to address that claim in the Memorandum in Opposition. (Doc. 25, at 10–11). Plaintiff only cursorily mentioned the Appeals Council in her Statement of Errors (Doc. 18, at 12, 13), and again, failed to provide the Commissioner with fair notice of her Constitutional claim in her Complaint (Doc. 1). In any event, the claim lacks merit with regard to the Appeals Council for the same reasons that the claim lacks merit with regard to the ALJ.

because even if § 902(a)(3) was unconstitutional it was severable from the remainder of the statutes governing the Social Security Administration); *Shaun A. v. Comm'r of Soc. Sec.*, Case No. C21-5003-SKV, 2021 WL 5446878, *4 (W.D. Wash. Nov. 22, 2021) (same); *John R. v Comm'r of Soc. Sec.*, 2021 WL 5356719, *8 (same).

In addition, even if the removal provision in § 902(a)(3) is unconstitutional, that would not have automatically rendered Former Commissioner Saul's appointment invalid, and thus, it would not have automatically invalidated his actions, including delegating authority to make benefits determinations or ratifying such delegations. In *Collins*, the Supreme Court found the unconstitutional removal provision did not render the FHFA's appointments invalid, and thus did not automatically void the FHAF's actions under the Director. 141 S.Ct. 1787 ("Although the statute unconstitutionally limits the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [that were challenged on appeal] as void."). Accordingly, infirmities in removal provisions do not automatically void appointments or actions taken by properly appointed officials. *Alice A. v. Comm'r of Soc. Sec.*, 2021 WL 5514434, *6 (finding that '[t]he infirm *removal* provision does not render Commissioner Saul's *appointment* invalid, which in turn does not render the ALJ's disability determination void.") (emphasis in original); *John R. v Comm'r of Soc. Sec.*, 2021 WL 5356719, *8 (finding that the unconstitutional "removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner").

Instead, to obtain reversal of an agency decision, a plaintiff must show "compensable harm" flowing from an unconstitutional removal clause. *Collins*, 141 S.Ct. 1788–89 (remanding for further proceedings to determine whether compensable harm to Plaintiff occurred due to the

14

President's inability to remove a Director of the FHFA except for cause). Here, Plaintiff makes no such showing. Plaintiff asserts that her injuries flow from an illegitimate delegation of power, that her harm involves "government actors exercising power which they did not lawfully possess," and that therefore, her harm should be presumed. (Doc. 25, at 15–17). In so doing, Plaintiff appears to conflate issues that might have presumably flowed from the unconstitutional *appointment* of Former Director Saul with a provision allowing for his unconstitutional *removal*. As explained above, however, appointments are not nullified by an unconstitutional removal provision. Nor are actions taken by a properly appointed official.

In short, Plaintiff has not pointed to a connection between any unconstitutional limit on Former Director Saul's removal and the ALJ's determination denying her benefits. *See also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir 2021) (finding that "there is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."). Nor is it likely that Plaintiff could do so, given that any particular ALJ or Appeals Council decision would not concern the President. *Cf. Collins*, 141 S.Ct. at 1802 (Kagan, J. concurring) ("The SSA has a single head with for-cause removal protection . . . But . . . I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

For all these reasons, the Undersigned finds that Plaintiff's separation of powers claim lacks merit. Accordingly, the Undersigned does not reach the Commissioner's alternative arguments including harmless error, de facto officer, the rule of necessity, and other prudential considerations.

### IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 18) and **AFFIRM** the Commissioner's decision.

### V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date:  December 21, 2021                /s/ Kimberly A. Jolson
                                        KIMBERLY A. JOLSON
                                        UNITED STATES MAGISTRATE JUDGE